Good morning, Your Honors. Matt Campbell from the Federal Defenders of Eastern Washington and Idaho on behalf of Mr. Llerenas, and I'd like to try to reserve three minutes for rebuttal. I'd like to primarily focus on the third issue, that the District Court abused its discretion in admitting the testimony of a so-called pimp prostitute expert. So, if you had, you were given the opportunity to object at trial to specific items from that witness, and some things you did object to and some things you did not object to. If you had to pick, though, the one or two that you thought were most prejudicial to you, what would they be? Just to clarify, you mean the most prejudicial information that came out? Yeah. I mean, he testified at some length on a variety of subjects, and I understand your overall, your overarching objections, but I'm asking you now, some of it seems to me, at worst, harmless error. If you had to point to the ones that you think are most prejudicial, what would they be? If I could step back for a moment, just to make sure we're sort of on the same page or I'm answering the question. Yeah. I think that primarily, the concern or the argument that we would have is that the testimony that he offered was not helpful, in that this was a relatively uncomplicated issue for the jury to understand. So, if it's not helpful, what's the harm? Well, the harm is that, in essence, Detective Stigerts was allowed to testify to a lengthy description of pimp-prostitute relationships and factors that are common to pimp-prostitute relationships and events. And what ended up happening, I believe, was that since none of that testimony was necessary, it ended up amounting to, in essence, vouching, where Detective Stigerts described a whole host of circumstances that occur between pimps and prostitutes. And the jury was left to understand, oh, the alleged victims in this case allege those types of events. Detective Stigerts says that's what happens, so therefore, he must be telling the truth. He gave a variety of different accounts, some of which clearly had no relationship to the particular case, and some of which did. For instance, he talked about the difference between gorilla pimps and finesse pimps. Well, no one was claiming that this was a gorilla pimp situation, right? Well, I'm not sure that that's totally true. There were some allegations in the record of threats to harm, and I believe there was one allegation that one of the victims was essentially struck or had her head sort of hit a car. So I think there were some allegations of gorilla pimps. But again, my overall concern is that the testimony itself, there was nothing that the jury couldn't understand alleged by the victims and any other witnesses the government had. So there was no real... But how is being unnecessary prejudicial? I mean, I confess, when I looked at it after the fact, I kind of wondered what he added to the mix. But planning the case, I assume the prosecutor thought there was a reason that was going to be important to present that testimony. You were given the opportunity to object or I don't know if you tried the case, but whoever tried the case, and there weren't objections. And so it might have been unnecessary, but an enormous number of things that happened in the courtroom turned out to be unnecessary. That doesn't make any of them prejudicial. So I'm still... One problem that Judge Rakoff has raised, which is, what was the harm? Well, I think, again, the harm was in conjunction with the fact that there was no necessity to this testimony. Oh, but again, you'll have to accept my premise that I don't see no necessity as being harmful. And so I need something more than that. Again, I think what this case essentially came down to, and I recognize there were numerous witnesses on the government side, but it was, in essence, a sort of he said, she said type of case. And I recognize there were, you know, maybe he said, she said, she said, or something like that. But this was not a case, for example, and there were several cases cited by both the government and myself, where there was sort of a complex scheme that they needed to understand. So the jury was fully capable of understanding the allegations made by the government. It didn't need any testimony from an expert. When the expert testimony came in, I think that the import of it was, he described a host of, for lack of a better term, factors or commonalities that often occur. The jury was left with, well, this is what the witnesses say, and this expert says sometimes this occurs between pimps and prostitutes. So there's consistency. Well, let me give you something that, this is really something I was going to ask your adversary about, but I might as well forecast it. So at page 1073 of the trial transcript, a question is put to this expert. How about when have you encountered situations when prostitutes are confronted with contact with law enforcement? In your experience, are they truthful with law enforcement? The defense counsel then made a, not only objection, but a continuing objection to that objection, but the court overruled it, and he, the expert then goes on and says, in essence, they lie at first, but eventually, at least in many cases, they come around, which could will be viewed as a specific invasion of the jury's historic prerogative to assess credibility. Credibility is uniquely reserved for the jury. There are many Ninth Circuit cases that say as much, and so isn't that a case where there was specific prejudice? Well, I think that's one certain example, and I think, and this gets to what I was, should have got to earlier, that we do believe there was a certain amount of vouching. I think it's malpractice not to say yes to my question. I agree, and I should have gotten to it earlier, mea culpa. But this is what I mean by, it ended up being sort of vouching, and there were numerous instances of this where it seemed like the questioning was designed to simply get the expert to say, don't, they sometimes not tell the truth. That is correct, because there were a series of questions between ER pages 1395 going on. Have you investigated parent traffickers? No. Have you trained on it? Yes. Is that the type of thing that happens? Yes. Parents have an advantage over children? Yes. Where, what the prosecution essentially did was talk about the facts of this case, including the truth question that Your Honor just asked, and got the witness to say, yes, that sounds like a pimp-prostitute relationship. Also mentioned at ER 1379, are kids in foster care a target? Yes. Do pimps threaten with knives? There was an allegation that a knife was pulled at one point, ER 1381. Of course, the answer was yes. Can threats against another girl become like threats against a family member at 1382? Yes. So, what we were left with, with an expert who was otherwise unhelpful, was a situation where the expert becomes like a Greek chorus to simply echo that the facts of this case sound like a pimp-prostitute relationship, in addition to the truth question that Your Honor had raised. Am I right, on the other hand, that there was no reference to the expert in the prosecutor's testimony? That is correct, Your Honor. I was reviewing that this morning, and I can find no references to it. And on the one hand, one could say, well, that shows that they didn't really rely on it. But I think, on the other hand, it underscores the fact that there was no real admissible purpose to this testimony. So, while admittedly one could say, well, they didn't rely on it too much in closing, the jury had heard it, and it essentially became sort of a second closing argument given during the middle of testimony, which I believe the Mejia case out of the Second Circuit talks about. I'd like to reserve the remainder of my time. All right. Good morning, and may it please the Court. My name is Allison Greggwire, and I represent the United States in this matter. Your Honor, turning first to your question, in this case, whether or not the expert invaded the problems of the fact finder by vouching for one of the witnesses, I do think it's important to note at the outset that the expert was not made privy to what any of the witnesses had said. It makes it, one might argue, even worse, because what he is being asked, and I don't know why in the world he was asked this question, but in your experience, are prostitutes truthful with law enforcement? First, I doubt extremely that he has a 702 methodological basis for answering that question, but assuming, arguendo, that he does, this is the only possible effect of that question is to say to the jury, you see, just as the witnesses in this case, the two victims whose credibility is the issue in this case, just as they initially lied and then told the truth, so that's what prostitutes always do with law enforcement, which is essentially what he says. So why wasn't it a direct invasion of the jury's province? Well I think there's two points, Your Honor. First of all, I think that the point of the question was to get at the initial mistrust of law enforcement, and I do think it came in a line of questions, and there were any mistrust of authority in general by these young people that pimps tend to prey upon, and that they look for these types of vulnerable people who have this mistrust of authority, and I think that was a part of a greater narrative, but additionally, I would note that when this expert was cross-examined by defense counsel and was specifically asked, isn't it true that these people could continue to lie in enforcement? Isn't it true that these prostitutes could in fact frame a pimp, or could frame someone as their pimp, could make up these stories? But he had objected to the admissibility of the question. The fact that having been overruled, he then tries his best to deal with it, doesn't erase the initial error of, assuming arguendo it was error, of the court in allowing this testimony over objection. I think assuming arguendo it was error, Your Honor, it neutralizes the error in that insofar as the error would be, or the prejudice stemming from the error would be, that he's saying these children are credible, or children, he didn't know these children, prostitutes are credible. He goes on then in response to a defense counsel's question to specifically say they can be incredible. In other words, it is absolutely possible, and he was privy to, situations where they were not credible. Let me ask you one other question. And right after that, the next line of questioning, beginning at 1075, is a question, have you encountered in your investigations instances of a parental figure, parental figure or parent acting as a trafficker of a child? Answer, an actual parent, no, I have not. But then, notwithstanding his saying that he has no such, he then on the next page questioned, is there anything in your training experience that you think a parent trafficking their child would have an advantage of, and with regard to any of the factors you've discussed in the trafficking world? The defense counsel objection, I think now the government does have to lay a foundation, and I don't think they can. But the judge overrules that. And then he goes on to say that, so far as that relationship goes, the bond between a child and a parent is the same as a parental trafficker. So how could that possibly be admitted? He didn't have a foundation. The judge wouldn't even deal, either pre-trial or at trial, with the objection that there was no foundation. He says that the only reason he can comment on this is basically from talking with some other law enforcement people that, if that's methodology under 702, anything goes. And what he says is directly in point with one of the issues that was contested in the case, which was whether the defendant was, in effect, making use of the parental relationship to force the victim into prostitution, which he denied and they asserted. So how is that not serious error? I think the court is making a lot out of one word. The expert was privy to situations where parents had prostituted their children. And I do think that that's fair to him to rely on, as he's able to rely on his training and experience. But more to the court's point, he certainly was privy to and gave extensive testimony about how the way in which these children are manipulated is not only through coercion and not only through supplying drugs and alcohol, but through supplying necessities. And that's how he spoke to specifically children who are homeless or in the foster care system. Children who are having their basic needs met by a pimp will stay with that pimp. And so his ability to be able to speak to someone who is meeting the basic needs of a child, be they a parent or otherwise, if they are providing for the needs of the child, they are unable to exert control over that child. And I think that's the point that was being met. So to the extent that that is, this is sort of the point was made a minute, extent that that is common sense, that every parent understands that possibility, he's adding nothing except he's putting the imprimatur of law enforcement on that. If, on the other hand, there was some legitimate addition, then he would have to show, would he not, that he was complying with Rule 702, which the judge did not require him to do. Oh, I think that the judge did require him to do it, Your Honor. Where do you do that? I'm looking at 702. It's not just a question of experience. The testimony must be the product of, quote, reliable principles and methods. With respect to this particular question that we're looking at, what is the reliable principle and method that he utilized? He had no actual experience with this. He's purporting to add something that the jury does not know of their own experience, because otherwise expert testimony is not admissible at all. And what is it he's adding on the basis of some casual things that some of his colleagues told him? How is that 702? Your Honor, I don't know that I'm prepared to speak to it, and I apologize if I wasn't responsive in my answer. In regard to 702, I wasn't speaking question per question, but in regard to the testimony as a whole, this person had more experience and had more detailed methodology in terms of training and experience and his ability to apply it. He testified as an expert 30 times in state court and 13 different federal districts. The court had a hearing about it. The court issued a ruling about it, and he had substantially more experience than was testimony and found to have met 702 in this type of an MO situation in Brooks and Taylor by this court. The defense asked for a Daubert hearing, and that was denied, right? Defense asked for a, yes, Your Honor, that is correct. So they never had the chance to cross-examine him before trial about his methodology? Your Honor, the defense asked for, well, the defense asked for a Daubert hearing, that's correct. And what happened was that the court held that the court would be better served to have these items in context and, yes, to ask for objections. And there were some limited objections, and I think the court's done well to illustrate a few. There were very, very limited objections. Well, I mean, I agree that's a problem for your adversary, but as the two examples I just mentioned show, that despite the judge saying, we'll take it up at trial, here it was two where specific objections were made, and the second one was specifically related to methodology on its face, and the judge says, eh, forget it. Yes, Your Honor, just in regard to the one question about whether or not a parent could serve in this role, and the expert said, yes, a parent could serve in this role and relied on his experience in terms of the ability of prostitutes staying with someone because their basic needs are being met. I do think that was squarely within the ambit of what he was qualified to testify to. And then I would just briefly mention, because I see my time has expired, that in any event, this was absolutely not prejudicial defendant. Every bit of the testimony that was given by the victims in this case was heavily corroborated by other witnesses in this case. That may be the case, and you may ultimately prevail on prejudice, but the problem that I see with this case is that the district court presiding over this trial made a general ruling that, given the nature of the charges in this case, an expert could offer something that would be outside of the jury's experience, and to the extent he's able to do that and the government can lay the appropriate foundation, then that is potentially helpful to the jury. But it's really hard for a trial judge to know exactly how far the government is going to go, and I think that's why the district court indicated to defense that it can also make specific objections if the expert goes beyond the realm of his expertise, for example, or offer information that would, under four or three, be overly prejudicial given the nature and facts of the case. But sometimes the government take that ruling to go too far and to overtry the case, meaning the expert testified to all kinds of things, some of which, as Judge Rakoff pointed out, I don't think the government laid the appropriate foundation for it, and some of it, I think under four or three, I don't see how it's really relevant to the facts of the case, and I think the prejudicial value would be high. And so it just seems to me that the government needs to be cautious in trying these sort of cases, all kinds of cases like drug trafficking cases, the government sometimes just overtries it and creates these sort of issues, and then, you know, you come to the circuit and you have to rely on prejudice to prevail. I understand the court's point, and, Your Honor, I would point just briefly, our Rule 16 disclosure, the government's Rule 16 disclosure and supplemental Rule 16 disclosure are contained in the excerpts of record. Defendant did not renew any objection based on those Rule 16 disclosures, and the government does believe it stayed within the bounds of the Rule 16 disclosures. Unless the court has further questions for me, thank you. Thank you. Thank you, Your Honors. In brief, the government had noted that the expert wasn't made privy to what the actual facts of the case, and I suppose that's true in a pretrial posture, but, again, I think that the problem here was that through the questioning that Judge Rakoff has gone over in some detail, the government essentially got the expert to confirm the individual facts of this case. So whether he knew them in advance or not, he clearly testified to the jury that those facts were entirely consistent with a pimp-prostitute relationship. There was some discussion about reliable principles and methodology. None were identified. Frankly, they weren't really identified in the Rule 16 disclosures that the government has just mentioned, and they weren't identified in court. And even if some sort of methodology existed, I think, again, the questions that Judge Rakoff has highlighted, that type of methodology, or whatever the methodology was, simply wouldn't exist for that type of vouching, for credibility, or for this parent-child relationship that Judge Rakoff has mentioned. And in regard to the Rule 16 disclosures that the government just mentioned, I think that the important issue there is that the Rule 16 disclosures may have outlined the general parameters that Detective Stigers was going to testify to, and the defense objected to those specific areas. So the fact that the government stayed within those parameters at trial is really irrelevant, since the defense had already objected to them, and the objection had been overruled. It was simply not reasonable to expect that the defense was going to continue to object to every question, since that's what the defense had already done, and had been told that that was not going to work. I see I'm over time. I'm happy to answer any questions. All right. I think we've got the argument. Thank you. The matter is submitted for a decision. U.S. v. Cloud.
judges: Clifton, Nguyen, Rakoff